# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0690-25

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

FREDY HERNANDEZ, a/k/a
FLAVIO AYUN MAQUINO,

    Defendant-Appellant.

_____

APPROVD FOR PUBLICATION
July 9, 2026
APPELLATE DIVISION

Argued May 19, 2026 – Decided July 9, 2026

Before Judges Sumners, Susswein and Chase.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 23-11-2796.

Colin Sheehan, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Colin Sheehan, of counsel and on the briefs).

Matthew T. Mills, Assistant Prosecutor, argued the cause for respondent (William E. Reynolds, Atlantic County Prosecutor, attorney; Matthew T. Mills, of counsel and on the brief).

The opinion of the court was delivered by

CHASE, J.A.D.

The United States and New Jersey Constitution's double jeopardy safeguards command that no person shall be "twice put in jeopardy of life or limb" for the same offense. This interlocutory appeal calls upon us to reaffirm that guarantee and to ensure that its promise is not rendered hollow by procedural missteps.

Defendant Fredy Hernandez stands indicted for first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1), and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1). Tried before a jury, defendant faced the weight of the State's evidence. The jury, after earnest deliberations, signaled its inability to reach unanimity on one count. The trial court declined to accept a partial verdict and declared a mistrial on both counts without determining which count had been unanimously decided.

Defendant was granted leave to appeal from a September 22, 2025 trial court order denying his motion to dismiss the indictment against him. Defendant contends that a second prosecution would offend the double jeopardy protection enshrined in both our Federal and State Constitutions. Applying binding precedent to the present facts, we are constrained to reverse and remand for an order dismissing the indictment. Otherwise, a retrial would subject defendant to prosecution for an offense of which he may already have been acquitted.

A-0690-25

I.

On November 14, 2023, an Atlantic County grand jury indicted defendant for first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1), (count one); and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1), (count two).  In count one, the indictment alleged that defendant committed "an act of sexual penetration upon S.A.,[1] when S.A. was less than [thirteen] years old."  In count two, it alleged that defendant "engaged in sexual conduct with S.A., which would impair or debauch the morals of S.A., a child under the age of [eighteen] years."

The case was tried before a jury in July 2025.  The jury heard opening statements and witness testimony on the first day, then closing arguments and jury instructions the following morning.[2]  According to the prosecutor's closing argument, both defendant and S.A. testified they had sexual intercourse and S.A. testified that she was twelve years old at the time.  Defendant did not contest that the two had sexual intercourse, but argued that, in relying exclusively on S.A.'s testimony as to her age—rather than producing

---

[1]  We use initials to protect the child's privacy, per Rule 1:38-3(c)(12).

[2]  The transcript comprising opening statements and witness testimony was not included in the record on appeal.  We therefore refer to the procedural history outlined in the trial court's decision denying defendant's motion to dismiss the indictment.

her birth certificate or testimony from her mother—the State had failed to prove S.A.'s age beyond a reasonable doubt.

Deliberations began around 10:30 a.m., immediately after the trial court finished instructing the jury. Shortly before noon, the court received a question from the jury about the meaning of the endangering charge. With the agreement of counsel, the court reiterated the relevant portion of its charge and instructed the jury to continue its deliberation.

Shortly before 3:00 p.m. the court received a note from the jury asking: "Would we be able to a get a copy of [S.A.'s] birth certificate or any other supporting evidence confirming her age?" The court instructed the jury that it could "only consider the evidence that's been presented here at trial" and directed it to continue deliberations.

Deliberations resumed the following day. The court noted that at around 12:30 p.m. the previous day, the jury had written a second note, although this one was not previously discussed on the record. The note, which was handed to jury management staff, advised that the jury was "not able to reach a verdict on one of the counts." However, before the note could be passed to the court, the jury went to lunch and decided it wished to continue deliberation, so the court never acted on the note.

A-0690-25

Later that morning, at around 10:30 a.m., the court received a new note, advising that the jury was "not able to reach a unanimous verdict on one of the two counts; no one will change their thinking." Because the jury had been deliberating for less than five hours in total, the court instructed them to continue deliberating, issuing the relevant model charges.

At 11:30 a.m., the jury sent another note indicating: "We cannot reach a unanimous verdict; the effort to change minds is unsuccessful!" The court and the parties then agreed that "the jury had deliberated to a point where . . . [n]o further deliberations would be fruitful." The court noted that it did not know "how [the jury] decided or which count," but indicated that "the next step would be to determine whether [it] should be taking a partial verdict."

The court heard arguments from the parties. The State argued against a partial verdict, expressing concern that a not-guilty verdict on the third-degree endangering charge might preclude retrial on the first-degree aggravated sexual assault charge. Defense counsel argued in favor of a partial verdict and a mistrial on the other count. In doing so, defense counsel argued that double jeopardy would not imperil a retrial since "endangering is not a lesser [-]included offense. It has separate elements from the charges of aggravated sexual assault."

5

The court determined that because the facts supporting each charge in this case were so similar, there could "potentially" be "arguments at least, whether they be successful, as to whether there would be double jeopardy." Therefore, the court declined to take a partial verdict. The court then dismissed the jury, never asking it which count they had agreed on. Additionally, the verdict sheet was never retrieved from the jury. After the jury was excused, the court entered a mistrial as to entire indictment. The result being that we do not know which count the jury resolved.

Facing retrial on both counts, defendant moved to dismiss the indictment on double jeopardy grounds. On September 22, 2025, after oral argument, the court issued an order and written opinion denying defendant's motion. The court reaffirmed that the facts and elements of the two charges overlapped enough that a partial verdict might result in retrial on the undecided charge being barred by double jeopardy. On that basis, it determined that a mistrial was manifestly necessary and thus did not trigger double jeopardy protection.

We granted defendant's motion for leave to appeal, which raises a single point:

> THE INDICTMENT AGAINST HERNANDEZ MUST BE DISMISSED BECAUSE RETRIAL WOULD VIOLATE HIS CONSTITUTIONAL AND STATUTORY RIGHTS TO BE FREE FROM DOUBLE JEOPARDY.

6

## II.

Defendant argues a partial verdict was an available alternative when the court improperly declared a mistrial as to both counts. Therefore, defendant posits that the court erred in declining to dismiss the indictment on double jeopardy grounds. We agree.

The Fifth Amendment of the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Our state Constitution likewise provides that "[n]o person shall, after acquittal, be tried for the same offense." N.J. Const. art. I, ¶ 11. Each "protects against (1) 'a second prosecution for the same offense after acquittal,' (2) 'a second prosecution for the same offense after conviction,' and (3) 'multiple punishments for the same offense.'" State v. Miles, 229 N.J. 83, 92 (2017) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). Though each uses different language, our Supreme Court has consistently held that our State's Constitution's protections are "coextensive" with those of the Federal Constitution. State v. Zadroga, 255 N.J. 114, 132 (2023). "[I]t is well settled that 'a trial [judge] must dismiss an indictment if prosecution would violate the defendant's constitutional rights' of freedom from double jeopardy." State v. Smith, 465 N.J. Super. 515, 533 (App. Div. 2020) (alteration in original) (quoting State v. Abbati, 99 N.J. 418, 425 (1985)).

7

A-0690-25

Among the "deeply ingrained" beliefs animating the double jeopardy prohibition is the idea that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense." Green v. United States, 355 U.S. 184, 187 (1957). This rule serves the same purpose advanced by "the doctrines of res judicata and collateral estoppel—to preserve the finality of judgments." Crist v. Bretz, 437 U.S. 28, 33 (1978).

These dangers are implicated in any serial prosecution, not only one that follows an acquittal. See Arizona v. Washington, 434 U.S. 497, 503-04 (1978) (explaining that, "[e]ven if the first trial is not completed, a second prosecution may be grossly unfair[]" because it "increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized . . .," and increases the risk of wrongful conviction). Our courts have thus recognized a defendant's complementary and "valued right to have his trial completed by a particular tribunal." Id. at 503; Smith, 465 N.J. Super. at 533. As a corollary, "[i]n a jury trial, jeopardy attaches after the jury is impaneled and sworn." State v. Allah, 170 N.J. 269, 279 (2002); see also Crist, 437 U.S. at 38. At that point, a "defendant is generally entitled to have a trial proceed to its conclusion," and "to be free from the harassment of successive prosecutions." Id. at 280.

A-0690-25

We stress victims also have certain rights guaranteed by our State Constitution and the Legislature.  See Victims' Rights Amendment of the New Jersey Constitution, N.J. Const. art. I, ¶ 22, and Crime Victim's Bill of Rights, N.J.S.A. 52:4B-34 to -38.  This court has remarked that, "[t]o set free criminal suspects whenever a trial is aborted would deny the innocent the protection due them and defeat the social contract upon which government is based." Smith, 465 N.J. Super. at 534 (alteration in original) (quoting State v. Torres, 328 N.J. Super. 77, 86 (App. Div. 2000)).  Although victims' rights "may not weigh as heavily in the scale as [those] of the defendant," given the latter's constitutional dimension and the "superior capacity" and positioning of the State, they are relevant.  Ibid. (quoting State v. Farmer, 48 N.J. 145, 174-75 (1966)).  Thus, when a court can "fairly . . . serve both interests," it should do so.  Ibid.

Courts have developed a sliding scale to balance these concerns.  "If the innocence of the accused has been confirmed by a final judgment, the Constitution conclusively presumes that a second trial would be unfair." Washington, 434 U.S. at 503.  Thus, the constitution "unequivocally prohibits a second trial following an acquittal."  Ibid.  However, courts have also recognized a "variety of circumstances that may make it necessary to discharge a jury before a trial is concluded," and further recognized that "those

A-0690-25

circumstances do not invariably create unfairness to the accused." Id. at 505. In such cases, "retrial is not automatically barred" and a defendant's right "to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest" in affording the State "one full and fair" chance to present its case. Ibid.; State v. Loyal, 164 N.J. 418, 435 (2000).

The question, then, is whether the termination of the prosecution was "improper." Zadroga, 255 N.J. at 133. Where there is "sufficient legal reason and manifest necessity to terminate a trial" prior to judgment—that is, to declare a mistrial—a defendant may be retried without offending the Constitution. Loyal, 164 N.J. at 435; see also Washington, 434 U.S. at 505. "The manifest necessity standard protects 'the defendant's interests in having his case finally decided by the jury first selected while at the same time maintaining the public's interest in fair trials designed to end in just [judgments].'" Zadroga, 255 N.J. at 133 (quoting Oregon v. Kennedy, 456 U.S. 667, 672 (1982)).

Alongside this Constitutional baseline, our Legislature has also codified protections against double jeopardy in statute. N.J.S.A. 2C:1-9 provides, among other things, that "prosecution of a defendant for a violation of the same provision of the statutes based upon the same facts as a former prosecution is barred" if the prosecution was "improperly terminated."

A-0690-25

Termination of a prosecution is presumed to be improper if, after the attachment of jeopardy, it is terminated without findings being rendered, as in the case of a mistrial. N.J.S.A. 2C:1-9(d). The statute outlines three exceptions: (1) the defendant "consents" or "waives . . . his right to object;"[3] (2) the jury is, after appropriate time, unable to agree upon a verdict; or (3) "[t]he trial court finds that the termination is required by a sufficient legal reason and a manifest or absolute or overriding necessity." N.J.S.A. 2C:1-9(d)(1)-(3).

"Because a defendant's right to be free from double jeopardy is fundamental, the State shoulders a 'heavy' burden of demonstrating the 'manifest necessity for any mistrial declared over the objection of the defendant.'" Loyal, 164 N.J. at 453 (quoting Washington, 434 U.S. at 505). While the manifest necessity standard "requires a high degree of necessity, making that judgment call is reserved to the broad discretion of the trial judge" in light of the sensitive, multifarious nature of the inquiry. Zadroga, 255 N.J. at 133.

In assessing whether a retrial following a mistrial is barred by double jeopardy, an appellate court may ask:

---

[3] Indeed, the course for which defendant advocated would have clarified the jury's conclusion and permitted a retrial on the deadlocked count.

A-0690-25

. . . Did the trial court properly exercise its discretion so that a mistrial was justified? Did it have a viable alternative? If justified, what circumstances created the situation? Was it due to prosecutorial or defense misconduct? Will a second trial accord with the ends of public justice and with proper judicial administration? Will the defendant be prejudiced by a second trial, and if so, to what extent?

[Loyal, 164 N.J. at 437 (quoting State v. Rechtschaffer, 70 N.J. 395, 410-11 (1976)).]

In State v. Smith, our Supreme Court explained the standard of review appellate courts must use when considering whether a trial court erred by failing to grant a mistrial. 224 N.J. 36 (2016). "Whether an event at trial justifies a mistrial is a decision 'entrusted to the sound discretion of the trial court.'" Id. at 47 (quoting State v. Harvey, 151 N.J. 117, 205 (1997), cert. denied, 528 U.S. 1085 (2000)). As a result, a reviewing court should not disturb a trial court's ruling absent a showing of an "abuse of discretion that results in a manifest injustice." Ibid. (quoting State v. Jackson, 211 N.J. 394, 407 (2012)). An abuse of discretion occurs when the trial court makes its decision "without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis." State v. Chavies, 247 N.J. 245, 257 (2021) (quoting State v. R.Y., 242 N.J. 48, 65 (2020)).

The Smith Court stressed that trial courts should only grant a motion for a mistrial "to prevent an obvious failure of justice." 224 N.J. at 47 (quoting

12

Harvey, 151 N.J. at 205).  The Court further explained that trial courts are obligated to "consider the unique circumstances of a case" when deciding a motion for a mistrial.  Ibid.  Granting a motion for a mistrial is inappropriate when "an appropriate alternative course of action" is available.  Allah, 170 N.J. at 281.

To determine if double jeopardy applies, we must first address defendant's contention that the trial court improperly declared a mistrial as to both counts when a partial verdict was an available alternative.  Rule 3:19-1(a) provides only that "the jury may" return a partial verdict on unanimous counts, allowing deadlocked counts to be retried.  Our courts have approved of partial verdicts where, for example, a jury agrees that a defendant should be acquitted of the offense charged but cannot reach consensus as to a lesser-included offense.  See State v. Ruiz, 399 N.J. Super. 86, 99 (App. Div. 2008).

Conversely, in State v. Johnson, 436 N.J. Super. 406 (App. Div. 2014), we identified one circumstance in which a court should not accept a partial verdict.  In Johnson, we held that, when a jury was deadlocked as to a charged count, it was an abuse of discretion to accept a partial verdict as to an uncharged lesser-included offense.  Id. at 422.  In reaching that conclusion, we emphasized that, since a jury is only permitted to consider lesser-included

13                                                                    A-0690-25

offenses if it has agreed to acquit a defendant of the greater count, such a partial verdict was improper. Id. at 424-25.

Unlike the situation in Johnson, this case does not involve a lesser-included offense that may only be considered if the jury acquitted defendant of the greater offense. Indeed, as the trial court instructed, the jurors could consider the charges "in any order [they] want." Thus, while Ruiz does not compel the court to accept a partial verdict, Johnson does not foreclose that option.

The United States Supreme Court held in Blockburger v. United States, 284 U.S. 299, 304 (1932), that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." "In other words, if each statute at issue requires proof of an element that the other does not, they do not constitute the same offense and a second prosecution may proceed." Miles, 229 N.J. at 93 (citing Blockburger, 284 U.S. at 304).

Beginning in the 1980s, both our Supreme Court and the United States Supreme Court adopted an additional, alternative test, which turned on the facts required to prove the offenses in the case at hand, rather than the generic elements of each offense. See generally Miles, 229 N.J. at 93-94. In 1993,

14

A-0690-25

however, the United States Supreme Court reversed course and rejected this so-called "same-evidence" test as impracticable, contrary to earlier precedent, and inconsistent with historical understandings of double jeopardy. United States v. Dixon, 509 U.S. 688, 704, 707-10 (1993). The Court returned to the Blockburger same-elements test. Miles, 229 N.J. at 94-95.

In 2017, our Supreme Court likewise rejected the same-evidence test leaving the Blockburger same-element test as the one that must be applied. Id. at 95. Properly administered, this test "analyzes the elements of the competing statutes to determine if each contains an element the other does not. If each statute contains at least one unique element, the subsequent prosecution may proceed." Id. at 96.

A review of the charging statutes shows that each contains an element that the other does not. As previously discussed, defendant in this case was charged with one count each of first-degree sexual assault, N.J.S.A. 2C:14-2(a)(1), and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1). N.J.S.A. 2C:14-2 provides, in relevant part, that "[a]n actor is guilty of aggravated sexual assault if the actor commits an act of sexual penetration with another person" if "[t]he victim is less than 13 years old." This means that the State must prove three elements:

> 1. That the defendant committed an act of sexual penetration with another person.

A-0690-25

2. That defendant acted knowingly.

3. That at the time of the penetration the victim was less than thirteen years old.

[Model Jury Charges (Criminal), "Aggravated Sexual Assault—Victim Less Than 13 (N.J.S.A. 2C:14-2a(1))" at 1 (rev. Jan. 24, 2005).]

In contrast, N.J.S.A. 2C:24-4(a)(1) applies, in relevant part, to any person who, not having a duty or responsibility to care for a child, "engages in sexual conduct which would impair or debauch the morals of the child." Thus, the State must prove: (1) that the defendant engaged in sexual conduct with the victim; (2) that the defendant engaged in that conduct knowingly; (3) that victim was under the age of eighteen; and (4) that the sexual conduct would impair or debauch the morals of a child. Ibid.; see also Model Jury Charges (Criminal), "Endangering the Welfare of a Child, Sexual Conduct (Third Degree) (N.J.S.A. 2C:24-4a(1))" (rev. Apr. 7, 2014); State v. Overton, 357 N.J. Super. 387, 395 (App. Div. 2003) (holding that a "knowing" state of mind was required).

The court held that because the offenses contained "[two] overlapping elements," double jeopardy might apply. But the test is not whether two offenses share some elements. Rather, the court must determine whether "each statute at issue requires proof of an element that the other does not." Miles, 229 N.J. at 93.

A-0690-25

The plain language of the respective offenses defendant was charged with shows, irrefutably, that each contains one or more elements that the other does not. First, aggravated sexual assault under N.J.S.A. 2C:14-2(a)(1) requires a victim to be under the age of thirteen, whereas N.J.S.A. 2C:24-4 requires only that the victim be under eighteen. A different age clearly is a vital element of each offense. The acts described by either statute would not, if performed with an adult, be sufficient to constitute a criminal offense. Second, N.J.S.A. 2C:24-4(a) also contains an element missing from N.J.S.A. 2C:14-2(a)(1): that the sexual conduct involved "would impair or debauch the morals of the child." Our Supreme Court has squarely held that whether an act "'would impair or debauch the morals' of a child" is a "separate" substantive element of the offense of endangerment. State v. Hackett, 166 N.J. 66, 76-77, 85 (2001).[4] Because each offense required elements the other did not, a partial verdict would not bar retrial of the remaining count. See Miles, 229 N.J. at 96 ("If each statute contains at least one unique element, the subsequent prosecution may proceed."). Therefore, the trial court mistakenly exercised its discretion by accepting the legal arguments made by the prosecutor—

---

[4] Although there is a third element that is different, in that aggravated sexual assault requires sexual penetration and endangerment applies more broadly to "sexual conduct," both parties agree that it is of no relevance because it was not challenged that there was sexual penetration.

A-0690-25

arguments that were based on an analytical test that had long since been jettisoned by both the United States and New Jersey Supreme Courts.

III.

We next consider the appropriate remedy for the trial court's misapplication of the governing Blockburger test. We find some guidance from State v. Salter, 425 N.J. Super. 504 (App. Div. 2012). In Salter, the defendant was charged with two counts of first-degree aggravated sexual assault for two incidents that occurred on the same day, one in the morning and one in the evening. The formal statements of the two charges—i.e., in the indictment, jury instruction, and verdict sheet—were identical to one another, each referring to an incident of the same act occurring at an unspecified time within the same multi-day period. Id. at 509-11. As a result, when the jury returned an acquittal on one count and a conviction on the other, it was unclear which verdict belonged to the "morning" incident, and which belonged to the "evening" incident. Id. at 510-12.

The conviction was overturned on appeal for unrelated reasons. Ibid. The trial court then found that the defendant could not be retried and we affirmed. Id. at 521-22. We reasoned that, whichever incident—"morning" or "evening"—the jury had acquitted defendant of was not amenable to retrial and, as a consequence of the ambiguous instructions and verdict sheet, it was

18

unclear which incident that was.  Id. at 513.  Therefore, there was at least "a colorable argument that [defendant's] retrial . . . [would] violate double jeopardy," and the State could not prove that it would not.  Id. at 521-22.

In Salter we lamented that it was necessary to dismiss the charge despite the previous, though overturned, conviction, acknowledging the "important sovereign interest" served by appropriate prosecutions.  Id. at 522.  Yet we also recognized that "we could not say with any confidence that defendant would not endure 'a second prosecution for the same offense after acquittal,' something categorically prohibited by our double jeopardy jurisprudence." Ibid. (quoting State v. Widmaier, 157 N.J. 475, 489 (1999)).

A trial court's failure to accept a partial verdict will almost always preclude a reviewing court from knowing which, if any, count the jury had resolved.  The confusion results from the fact that the trial judge declared a mistrial rather than inquire further or accept a partial verdict.  Furthermore, "[o]nce a jury has been discharged and dispersed, it cannot be reassembled . . . to correct an omission in the verdict, including the failure to announce a portion of the verdict agreed upon but not reported."  State v. Black, 380 N.J. Super. 581, 589 (App. Div. 2005) (citing State v. Fungone, 134 N.J. Super. 531, 536 (App. Div. 1975), certif. denied, 70 N.J. 526 (1976)).  Therefore, the jury cannot be ordered to return and announce which count it had a verdict on

19

and it would be mere speculation for us to determine which count the jury could not reach a unanimous decision on.

Bound by <u>Salter</u>, we are constrained to find that double jeopardy precludes retrial, and the indictment must be dismissed. If we were to reach any other result, defendant would face re-prosecution for a crime of which he might have been acquitted. The Constitution is not satisfied by speculation. The State cannot retry defendant unless it can demonstrate, with certainty, that the jury did not acquit him of either offense. That demonstration is impossible here.

Reversed and remanded for an order dismissing the indictment. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-0690-25